UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROSA ORTEGA, DDS,

        Plaintiff,     :

  v.                              Case No. 2:24-cv-3702
                                  Chief Judge Sarah D. Morrison
                                  Magistrate Judge Kimberly A.
NATIONWIDE CHILDREN'S         Jolson
HOSPITAL, *et al.*,         :

        Defendants.

**OPINION AND ORDER**

Rosa Ortega, DDS, filed this action against her former employer, Nationwide Children's Hospital ("NCH"), and nine Doe Defendants for federal and state law discrimination and retaliation claims. (SAC, ECF No. 34.) NCH now moves to dismiss the operative Second Amended Complaint for failure to state a claim upon which relief may be granted. (Mot., ECF No. 36.) For the reasons below, NCH's Motion is **GRANTED in part** and **DENIED in part**.

I.    BACKGROUND

Dr. Ortega, a Hispanic American woman, first joined NCH as a Staff Dentist in 2017. (SAC, ¶¶ 10–11.) Before joining NCH, Dr. Ortega had been diagnosed with arthritis affecting her right thumb. (*Id.*, ¶ 17.) That condition made it difficult for her to extract patients' permanent molars. (*See id.*, ¶ 23.) When Dr. Ortega expressed concern about performing extractions, NCH "criticized [Dr. Ortega] for her reluctance, inferring that [she] was professionally inadequate, resulting in her

being pressured into performing the extractions despite her stated concerns[.]" (*Id.*, ¶ 24.)

By the end of 2021, NCH had granted Dr. Ortega a formal medical accommodation exempting her from performing permanent molar extractions. (*Id.*, ¶ 35.) Nevertheless, NCH assigned Dr. Ortega to perform ten permanent molar extractions between January 2022 and May 10, 2023. (*Id.*, ¶¶ 39, 47.) Dr. Ortega alleges that white male dentists' medical accommodations were "honored and adhered to." (*Id.*, ¶ 58.) She further alleges that she was required to "routinely apply to renew her accommodation" and that her disability was subject to "invasive and far-reaching review," unlike similarly situated white male colleagues with disability accommodations. (*Id.*, ¶¶ 37–57.)

Separate and apart from her medical accommodation, Dr. Ortega alleges that NCH assigned her a "disproportionately higher workload of physically demanding clinical hours" as compared to administrative hours and "refused to grant [her] multiple requests for equivalent administrative hours" as white male colleagues with or without disabilities. (*Id.*, ¶¶ 40–41.)

Finally, Dr. Ortega alleges that NCH was simply not a nice place to work. In particular, she alleges that a supervisor once called her a "tattle tale" for raising workplace safety concerns (*id.*, ¶ 31), that NCH disregarded a co-worker's sexual harassment complaint (*id.*, ¶ 34), and that leadership "routinely question[ed]" non-white employees' work ethic (*id.*, ¶ 27).

Dr. Ortega alleges that the general work environment and specific instances of discrimination created intolerable conditions, causing her to tender a resignation on March 23, 2023. (*Id.*, ¶ 44.) Her last day of work at NCH was June 20, 2023. (*Id.*) She asserts nine claims against her former employer, alleging violations of the Americans with Disabilities Act ("ADA"), Rehabilitation Act of 1973, 42 U.S.C. § 1981, and Ohio law. (*Id.*, *generally*.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## III. ANALYSIS

### A. Counts I, II, and III: Americans with Disabilities Act

Dr. Ortega asserts three claims against NCH under the ADA. In Count I, she alleges that NCH failed to accommodate her disability when it required her to perform ten permanent molar extractions despite an approved accommodation exempting her from such procedures. In Count II, she alleges that NCH retaliated against her for requesting an accommodation when it denied her requests for more administrative hours and fewer clinical hours.[1] And in Count III, she alleges that these facts, in addition to disparaging comments made about her for raising safety concerns, created a hostile work environment that forced her to resign (a constructive discharge).

NCH argues that Dr. Ortega's ADA claims must be dismissed for failure to timely exhaust her administrative remedies. The Court agrees.[2] "[A] claimant who

---

[1] Dr. Ortega also alleges that NCH retaliated against her by forcing her to perform permanent molar extractions. But that is direct discrimination under the ADA, *see* 42 U.S.C. §§ 12112(a), (b)(5)(A), not retaliation, *see* 42 U.S.C. § 12203(a). This Court agrees with others that have held that "an employer's alleged failure to accommodate cannot serve as an adverse employment action to support a retaliation claim." *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2024 WL 1905045 (E.D. Tenn, Mar. 22, 2024) (collecting cases).

[2] Because Dr. Ortega's failure to timely exhaust her administrative remedies is dispositive, the Court does not address NCH's other arguments to dismiss Counts I, II, and III.

4

wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')] within 300 days of the alleged discrimination." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citing 42 U.S.C. §§ 12117(a), 2000e–5(e)(1), and *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000)). "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of . . . [an] ADA action." *Williams v. Nw. Airlines*, 53 F. App'x 350, 351 (6th Cir. 2002) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Although Dr. Ortega alleges that she performed her final permanent molar extraction on May 10, 2023, she does not allege when she requested a change in her administrative hours, when those requests were denied, or when any disparaging remarks were made. That leaves two concrete events of alleged discrimination which could start the clock on Dr. Ortega's 300-day period to file her EEOC charge: the March 23, 2023 resignation and the May 10, 2023 permanent molar extraction. Because Dr. Ortega filed her EEOC charge on April 5, 2024, more than 300 days after her both of those events, the charge was not timely. Counts I, II, and III are thus appropriately dismissed.

Dr. Ortega makes two arguments in support of starting the 300-day filing period on June 20, 2023 (her final day of employment and only 290 days before she filed her EEOC charge). Neither is availing.

First, Dr. Ortega invokes the "continuing violation" doctrine to argue that NCH maintained a policy of discrimination on the basis of her disability. Under that

5

doctrine, a "longstanding and demonstrable policy" of unlawful conduct can toll the limitations period—but any party seeking "to invoke the continuing-violations doctrine also must allege they have suffered a specific discriminatory act within the applicable limitations period." *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (citing *Dixon v. Anderson*, 928 F.3d 212, 217–18 (6th Cir. 1991), *abrogated on other grounds by Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003)); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Dr. Ortega's Second Amended Complaint fails to allege any specific discriminatory act within the 300 days preceding her EEOC charge.

Second, Dr. Ortega argues that her constructive discharge occurred on the final date of her employment with NCH, rendering her charge timely. But case law makes clear that a constructive discharge claim accrues on the day a plaintiff resigns from employment. *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613 (6th Cir. 2020) (explaining that an ADA constructive discharge claim accrues when the plaintiff resigns); *see also Green v. Brennan*, 578 U.S. 547, 554 (2016) (applying the "standard rule" that a "limitations period commences when the plaintiff has a complete and present cause of action" to mean that the plaintiff's constructive discharge claim accrued on the date of his resignation); *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 816, 817 n.3 (6th Cir. 2020) (discussing

6

whether *Green* eliminated the subjective intent requirement for a constructive discharge, but acknowledging that the "rationale center[ed] on when courts should 'start the limitations clock'"). For Dr. Ortega, that day is March 23, 2023, and her April 5, 2024 charge was filed more than 300 days later.

NCH's Motion to Dismiss Counts I, II, and III of Dr. Ortega's Second Amended Complaint is **GRANTED**.

### B. Count IV: Rehabilitation Act

In Count IV, Dr. Ortega alleges that NCH violated § 504 of the Rehabilitation Act, which prohibits recipients of federal funds from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her . . . disability[.]" 29 U.S.C. § 794(a). Her claim is premised on failure-to-accommodate, retaliation, and hostile work environment theories.[3] (*See* SAC, ¶¶ 102.b.–d.)

NCH argues that the claim fails because the Second Amended Complaint identifies multiple bases for discrimination—including disability, race, and sex—while the express language of the statute requires a showing "that the disability was the 'sole' cause of the adverse employment action." *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 316 (6th Cir. 2012). The Rehabilitation Act thus sets a "higher bar" for a plaintiff than the ADA, which requires simple but-for cause. *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). But the Civil Rules expressly permit alternative, and even contradictory, pleading. Fed.

---

[3] Count IV also refers to a separate disparate-treatment theory. (*See* SAC, ¶ 102.a.) But the only treatment Dr. Ortega alleges was taken solely because of her disability is the failure to accommodate, which is analyzed separately.

7

R. Civ. P. 8(d)(2), (3). Dr. Ortega adequately pleads a Rehabilitation Act claim in the alternative, alleging that certain of NCH's acts were motivated solely by her disability. (*See* SAC, ¶¶ 38, 40.) This sets her case apart from others cited in NCH's brief, where the pleadings never distinguished between discrimination based solely on disability and discrimination based on disability <u>and</u> another protected characteristic. *See, e.g., Robertson v. Univ. of Akron Sch. of L.*, No. 5:20-CV-1907, 2021 WL 3709915, at *10 (N.D. Ohio Aug. 20, 2021) (finding that "the only factual allegations in the complaint support a finding, if believed, that [defendants] discriminated against [plaintiff] on the basis of his disability *and his age*" and citing allegations in the complaint that referenced both disability and age as bases for discrimination), *aff'd*, No. 21-3768, 2022 WL 1836922 (6th Cir. June 3, 2022); *Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-CV-753, 2012 WL 3779934, at *5 (S.D. Ohio Aug. 31, 2012) (Black, J.) (dismissing Rehabilitation Act claim where "[p]laintiff failed to allege that disability was the sole reason for her termination" and instead made single factual allegation that she was terminated based on her disability and race).

In other words, the fact that Dr. Ortega cannot prevail on every one of the alleged theories of discrimination does not prevent her from alleging them. *Accord Barnum v. Ohio State Univ. Med. Ctr.*, No. 2:12-cv-930, 2013 WL 5969724, at *10 (S.D. Ohio Nov. 8, 2013) (Economus, J.) (finding "no controlling case law . . . holding that a plaintiff cannot allege a claim under the Rehabilitation Act as an alternative and inconsistent theory of recovery"); *cf. Saqr v. Univ. of Cincinnati*, No. 1:18-CV-

8

542, 2019 WL 699347, at *11 (S.D. Ohio Feb. 20, 2019) (Bowman, M.J.) (dismissing Rehabilitation Act claim for failure to allege that discrimination was the sole basis of discriminatory treatment and noting that "[p]laintiffs do not plead their claims in the alternative, but instead rely upon the same set of allegations for all claims"), *report and recommendation adopted*, No. 2019 WL 1200802 (S.D. Ohio Mar. 14, 2019) (Dlott, J.). Count IV thus requires a closer look.

Failure to Accommodate. To state a Rehabilitation Act discrimination claim based on a failure-to-accommodate, a plaintiff must allege that (i) she has a qualifying disability, (ii) she is otherwise qualified, with or without a reasonable accommodation, (iii) her employer was aware of the disability, (iv) she requested a reasonable accommodation, and (v) her employer failed to provide one. *See Schobert v. CSX Transport. Inc.*, 504 F. Supp. 3d 753, 791–92 (S.D. Ohio 2020) (Cole, J.). NCH does not dispute that Dr. Ortega has plausibly alleged each of these elements.

Retaliation. To state a Rehabilitation Act retaliation claim, a plaintiff must allege that (i) she engaged in a protected activity, (ii) her employer knew of the protected activity, (iii) her employer took adverse action against her, and (iv) there is a causal connection between the protected activity and the adverse action. *Id*. at 785. Dr. Ortega alleges that NCH retaliated against her for requesting accommodations when it assigned her a "disproportionately higher" clinical, as opposed to administrative or teaching, workload. (*See, e.g.*, SAC, ¶ 41.) NCH argues that the claim fails because Dr. Ortega does not allege facts supporting an inference that her accommodation requests caused the disproportionate work assignment.

9

(Reply, ECF No. 39, PAGEID # 357–58.) The Court agrees. Dr. Ortega does not allege, for example, when her workload was assigned relative to her accommodation requests, or whether her workload was assigned by the same person to whom the accommodation requests were made. There are no facts alleged that would allow the Court to tie a causal string between the two.

<u>Hostile Work Environment</u>. Finally, to state a hostile-work-environment claim under the Rehabilitation Act, a plaintiff must allege that (i) she was disabled, (ii) she was subject to unwelcome harassment, (iii) the harassment was based on her disability, (iv) the harassment unreasonably interfered with her work performance, and (v) the defendant knew or should have known about the harassment yet failed to take corrective action. *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023); *see also Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005) (explaining that the standard for a hostile-work-environment claim is generally the same whether the claim is brought under the Rehabilitation Act, the ADA, or Title VII). A workplace is "hostile or abusive" when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal quotations and alterations omitted).

Accepting Dr. Ortega's factual allegations as true and construing all reasonable inferences in her favor, the Court finds that Dr. Ortega fails to allege that NCH was permeated with disability discrimination so severe or pervasive as to

render it a hostile work environment. Dr. Ortega worked at NCH for six years. During that time, she was "criticized" for requesting an accommodation (SAC, ¶ 24), "forced" to perform ten procedures outside of her approved accommodation (*id.*, ¶ 86), and assigned a disproportionately higher number of physically intensive clinical hours (as opposed to administrative hours) compared to similarly situated colleagues (*id.*, ¶ 40).[4] These allegations do not approach the level of harassment required for an actionable hostile work environment.

NCH's Motion to Dismiss Count IV is **DENIED** as to the failure-to-accommodate theory and **GRANTED** as to the balance of the claim.

### C. Count V: Section 1981

Section 1981 prohibits race discrimination in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981(a). The statute defines making and enforcing contracts to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To prevail on a § 1981 claim, a plaintiff must "plead and prove" that (i) that she belongs to an identifiable class of persons subject to discrimination based on their race, (ii) the defendant intended to discriminate against her on the basis of race, and (iii) such discriminatory conduct

---

[4] Dr. Ortega alleges certain other unpleasant aspects of her work environment at NCH. But none of those allegations can fairly be read as <u>disability</u> discrimination. For example, Dr. Ortega alleges that she was required to re-certify her accommodation more frequently, and that her disability was subject to a more "invasive" review—but, critically, she compares her treatment to that of white, male colleagues, indicating that the treatment was "based on" her race or gender, and not her disability. (SAC, ¶¶ 37, 57.)

11

"abridged" her right to make and enforce contracts, as that term is defined in the statute. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). To survive a motion to dismiss, a plaintiff must allege sufficient factual content to allow the Court, informed by its "judicial experience and common sense," to "draw the reasonable inference" that the defendant intentionally interfered with or impaired the plaintiff's contractual right on the basis of race. *Keys v. Humana*, Inc., 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678–79).

NCH argues that Dr. Ortega fails to allege facts supporting the reasonable inference that it intentionally discriminated against her on the basis of her race. (Mot., PAGEID # 305–06.) Dr. Ortega argues in response that she has alleged that NCH "treated its white staff members better" than staff members of other races. (Resp., PAGEID # 338.) She points to <u>general</u> allegations that NCH takes "harsher disciplinary actions" against non-white staff members (SAC, ¶ 28), "routinely question[s]" the "work ethic of non-white employees" (*id.*, ¶ 27), and pays white pediatric dentists "more" than non-white dentists (*id.*, ¶ 114). As to these general allegations, Dr. Ortega fails to allege that *she* was the subject of any disciplinary action (discriminatory or otherwise), that *her* work ethic was questioned, or that *she* was paid less than a similarly-situated white colleague. She therefore fails to state a claim for discrimination on these theories. *Cf.*, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding that § 1981 does not provide a cause of action for disparate impact claims); *Bacon v. Honda of Am. Mfg., Inc.*, 370

12

F.3d 565, 575 (6th Cir. 2004) (holding that "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs").

But Dr. Ortega does allege that NCH took four specific actions against her on the basis of her race. The first three actions relate to Dr. Ortega's disability accommodation. First, Dr. Ortega alleges that NCH undertook an "invasive and far-reaching review of her disability," unlike a white male colleague who requested an accommodation. (SAC, ¶ 57.) Dr. Ortega next alleges that NCH failed to honor her disability accommodation, while it honored and adhered to the white male colleague's. (*Id.*, ¶¶ 38, 58.) Finally, Dr. Ortega alleges that NCH required her to "routinely apply to renew her accommodation," but did not impose the same requirement on her white male colleagues. (*Id.*, ¶ 37.) Apart from her disability accommodation, Dr. Ortega alleges that NCH assigned her a disproportionate number of physically demanding clinical hours, as compared to white male colleagues. (*Id.*, ¶ 41.) On these more specific grounds, Dr. Ortega has adequately alleged that NCH engaged in intentionally discriminatory conduct that abridged her enjoyment of all benefits, privileges, terms, and conditions of employment.

NCH's Motion to Dismiss Count V is **DENIED** to the extent it is based on the specific allegations of discriminatory conduct; it is otherwise **GRANTED**.

**D.    Counts VI, VII, VIII, and IX: State Law Claims**

Finally, Dr. Ortega asserts four claims under Ohio's anti-discrimination laws—for disability discrimination, race discrimination, sex discrimination, and retaliation. (SAC, ¶¶ 106–50.)

NCH argues that Dr. Ortega's state-law discrimination claims should be dismissed, but does not engage with whether the facts alleged in the Second Amended Complaint are sufficient to state a claim for relief. Facts are what claims are made of. *Iqbal*, 556 U.S. at 678. Without serious argument on the sufficiency of the factual allegations to make out state-law discrimination claims, NCH's motion as to these claims is **DENIED**.

As to Dr. Ortega's state-law retaliation claim, the claim fails for the same reasons as her Rehabilitation Act retaliation claim. (*See* § III.B., *supra*.) NCH's Motion to Dismiss Count IX is **GRANTED**.

## IV. CONCLUSION

For these reasons, NCH's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The following claims survive the motion and will proceed to discovery:

- Count IV (Rehabilitation Act): To the extent it relies on a failure-to-accommodate theory;
- Count V (§ 1981): To the extent it relies on specific allegations of intentionally discriminatory conduct; and
- Counts VI, VII, and VIII (Ohio Law).

The balance of Dr. Ortega's claims against NCH are **DISMISSED**.

IT IS SO ORDERED.

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**